UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:                                       Chapter 13

    Veronica C. Hosking            Case Nos.:    14-35174 (CGM)
                                                                                   15-03999 (VLB)

                    Debtor(s)             **AFFIRMATION**

---

**TO THE HONORABLE CECELIA G. MORRIS, CHIEF BANKRUPTCY JUDGE:**

The application of Rushmore Loan Management Services LLC ("Rushmore"), by its attorneys, Knuckles, Komosinski & Elliott, LLP, respectfully shows and alleges:

## OVERVIEW

1. In accordance with Bankruptcy Rule 8007, Rushmore respectfully requests a stay of all bankruptcy proceedings and payment in the sum $3,525.94 to Debtor's Attorney Stacey P. Byford, Esq. pending the appeal of the Order entered on May 14, 2015 ("the Order") by this Court.

2. As shall be further stated below, it is respectfully submitted that this Court should grant Rushmore's application in its entirety because it meets the four (4) part test for determining whether to grant a stay pending appeal: (a) whether the movant will suffer irreparable injury absent a stay; (b) whether other parties will suffer substantial injury if a stay if issued; (c) whether the movant has demonstrated substantial possibility of success on appeal; and (d) the public interests that may be affected.

## PROCEDURAL HISTORY

3. On January 31, 2014, the Debtor, Veronica Hosking (the "Debtor") filed a voluntary petition for relief under the Chapter 13 of the Bankruptcy Code (Docket Entry # 1).

4. On March 3, 2014, Debtor filed an application for loss mitigation (Docket Entry #2). A copy of Debtor's application for loss-mitigation is annexed hereto as **Exhibit A.**

5. On July 1, 2014, U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series, 2013-1T ("U.S. Bank") filed a letter via ECF requesting Debtor's counsel, Stacey P. Byford, Esq. requesting that Debtor submit a loss mitigation order since same had not been submitted for almost three (3) months (Docket Entry # 18). A copy of the July 1, 2014 letter is annexed hereto as **Exhibit B**.

6. On July 8, 2014, this Court signed an Order granting Debtor's request for Loss Mitigation (the "Loss Mitigation Order") (Docket Entry # 19). A copy of the Loss Mitigation Order is annexed hereto as **Exhibit C**.

7. On August 12, 2014, this Court issued an Order to Show Cause due to Debtor's failure to comply with the Loss Mitigation Order for failure to serve timely serve same (Docket Entry # 24). A copy of the Order to Show Cause is annexed hereto as **Exhibit D**.

4

8. On August 12, 2014, U.S. Bank filed a creditor loss-mitigation affidavit (Docket Entry #27). A copy of the creditor loss-mitigation affidavit is annexed hereto as **Exhibit E**.

9. By email dated August 13, 2014, Debtor's counsel was advised that Debtor needed to provide proof of a down payment. A copy of the August 13, 2014 email with enclosures is annexed hereto as **Exhibit F**.

10. On August 28, 2014, the Trustee filed a motion to dismiss this bankruptcy proceeding (Docket Entry #34). A copy of the motion to dismiss is annexed hereto as **Exhibit G**.

11. On September 2, 2014, a creditor loss mitigation affidavit was filed with the Court advising that Debtor was required to provide proof of down payment or letter of explanation as to why no down payment was available (Docket Entry # 36). A copy of the creditor loss mitigation affidavit is annexed hereto as **Exhibit H**.

12. On September 5, 2014, Debtor's counsel was advised via email that Debtor needed to provide proof of funds for a down payment. A copy of the September 5, 2014 email with enclosures is annexed hereto as **Exhibit I**.

13. On September 9, 2014, Debtor was advised via email that Debtor had failed to provide proof of funds for a down payment. A copy of the September 9, 2014 email with enclosures is annexed hereto as **Exhibit J**.

14. On September 26, 2014, U.S. Bank filed a status letter via ECF advising that Debtor had not provided a good-faith down payment (Docket Entry # 40) A copy of this letter is annexed hereto as **Exhibit K**.

5

15. On October 7, 2014, a letter was issued in which Debtor was denied for failure to provide a good-faith down payment. A copy of the October 7, 2014 letter is annexed hereto as **Exhibit L**.

16. On December 15, 2014, U.S. Bank filed a status letter via ECF advising that Debtor had not provided a good-faith down payment and requested loss-mitigation be terminated (Docket Entry #48). A copy of the December 15, 2014 letter is annexed hereto as **Exhibit M**.

17. On December 17, 2014, this Court ordered a senior vice president with authority to appear on January 21, 2015.

18. On January 21, 2015, Mike Aiken, Vice President and Litigation Attorney at Rushmore appeared pursuant to the Court's request. At the January 21, 2015 hearing, the Court ordered the "investor" appear to further explain the investor guidelines related to the denial at a February 25, 2015 evidentiary hearing.

19. On February 25, 2015, an evidentiary hearing was held in which William Bell testified.

20. On April 20, 2015, this Court issued a Memorandum Decision ("Decision") finding, *inter alia*, that Rushmore failed to participate in good faith this Court's Loss Mitigation Program Procedures (Docket Entry # 71). A copy of the Decision is annexed hereto as **Exhibit N**.

21. On May 8, 2015, Debtor's counsel filed a letter via ECF requesting the Court provide guidance as to how Loss Mitigation should proceed in light of the

Decision (Docket Entry # 72). A copy of the May 8, 2015 letter is annexed hereto as **Exhibit O**.

22. On May 14, 2015 this Court issued an Order (the "Order") that Rushmore Loan Management Services LLC failed to participate in good faith in the United States Southern District Court of New York Bankruptcy Court's Loss Mitigation Program and awarded Debtor the total sum of THREE THOUSAND FIVE HUNDRED TWENTY FIVE DOLLARS AND NINETY FOUR CENTS ($3,525.94) (Docket Entry # 75). A copy of the Order is annexed hereto as **Exhibit P**.

23. On May 22, 2015, Rushmore filed a notice of appeal of the Decision and Order (Docket Entry # 76). A copy of the notice of appeal is annexed hereto as **Exhibit Q**.

24. On May 22, 2015, the undersigned was advised that Debtor's counsel had left her practice and was no longer available. A copy of the May 22, 2015 confirming same is annexed hereto as **Exhibit R** (Docket Entry # 77).

25. On May 28, 2015, Debtor's counsel filed a letter via ECF advising that she was still the attorney of record (Docket Entry # 79). A copy of the May 28, 2015 letter is annexed hereto as **Exhibit S**.

26. On June 1, 2015, Debtor's counsel filed a letter via ECF advising she was waiting for Rushmore to provide Debtor with a trial offer (Docket Entry # 80). A copy of the June 1, 2015 letter is annexed hereto as **Exhibit T**.

27. On June 2, 2015, Rushmore filed its statement of the issues and designation of the record on appeal (Docket Entry # 80). A copy of the statement of the issues and designation of the record on appeal is annexed hereto as **Exhibit U**.

28. Thereafter, Rushmore filed the instant application.

## BASIS FOR RELIEF

29. Bankruptcy Rule 8007 (a)(1) empowers this Court to grant a stay of a judgment, order of decree of the bankruptcy court pending. See Federal Bankruptcy 8007 (a)(1). Moreover, the bankruptcy court is the appropriate court in the first instance for a party seeking a stay pending appeal. In Re BGI Inc., 504 B.R. 754 (S.D.N.Y. 2014); In Re Taub, 470 B.R. 273 (E.D.N.Y. 2012)

30. This Court has a four part test for determining a motion for stay pending appeal: (a) whether the movant will suffer irreparable injury absent a stay; (b) whether other parties will suffer substantial injury if a stay if issued; (c) whether the movant has demonstrated substantial possibility of success on appeal; and (d) the public interests that may be affected. In Re BGI Inc., 504 B.R. 754 (S.D.N.Y. 2014); In Re County Squire Associates of Carle Place, LP, 203 B.R. 182 (B.A.P. 2d Cir. 1996); Hirschfeld v. Board of Elections, 984 F..2d 35 39 (2d Cir. 1993). The inquiry of whether to grant a stay pending appeal is a balancing of factors that must be weighed. In Re Adelphia Communications Corp., 361 B.R. 337 (S.D.N.Y. 2007)

### A. RUSHMORE WILL SUFFER IRREPRABLE HARM ABSENT A STAY

31. Irreparable harm must be neither "remote nor speculative, but actual and imminent." In Re BGI Inc., 504 B.R. 754 (S.D.N.Y. 2014). As further stated below, a

failure to grant a stay pending appeal of the Decision and Order would cause irreparable harm to Rushmore.

32. First, Rushmore would suffer imminent irreparable harm by having to pay the sanction of $3,525.94. See Exhibit O. In addition, since Debtor's counsel indicated she is closing her practice, Rushmore may not be able to recover same, even if successful on appeal. See Exhibit S.

33. Second, while the Decision and Order sanctions Rushmore for its alleged failure to participate in good faith in the United States Southern District Court of New York Bankruptcy Court's Loss Mitigation Program it provides no guidance on how the parties shall proceed as to Loss Mitigation. See Exhibits N and P. In fact, Debtor's attorney acknowledges this Court has failed to provide guidance as to how loss mitigation should proceed but expects Rushmore to provide "a modification" and is awaiting "receipt of Rushmore's trial offer". See Exhibit S and U.

34. Contrary to the Decision and Order, it is respectfully Rushmore has acted in good faith and loss mitigation should have been terminated on December 17, 2014 as requested in its December 15, 2014 status letter. See Exhibit M. However, the Court has not terminated the loss mitigation order. Moreover, assuming Loss Mitigation is still continuing, pursuant to the Loss Mitigation Procedures, Rushmore cannot seek termination of the automatic stay for Debtor's failure to make post-petition payments pursuant to the 11 U.S.C. 362 of the Bankruptcy Code until the court terminates loss mitigation. See United States Bankruptcy Court Southern District of New York Loss Mitigation Program Procedures, Section VI(C)(2). Accordingly, until the appeal is

9

resolved, Rushmore has no means to terminate loss mitigation other than to issue a modification offer that has to be accepted by Debtor and approved by this Court, resulting in a severe financial loss. Thus, a stay is required to prevent an actual and imminent financial loss.

B. **NO PARTY IN INTEREST WILL BE HARMED BY THE ISSUANCE OF THE STAY**

35. The only party that could be harmed by the stay is the Debtor. However, Rushmore respectfully submits that a stay pending appeal will actually benefit Debtor. As stated at the February 25, 2015, hearing, Debtor has not made any post-petition payments stating in part:

> Mr. Kossar: And have you received any payments during the pendency of the bankruptcy action?
> Mr. Bell: We have not.

See Trial Trans. 44: 6-8.[1]

36. Accordingly, by staying this action, as stated above, Debtor will not have to make any post-petition because Rushmore cannot make an application to lift the stay. See Supra, ¶¶ 32. Thus, there is no harm to Debtor by issuance of the stay.

C. **THERE IS A SUBSTANTIAL POSSIBILTY OF SUCCESS ON APPEAL**

37. The Court must also determine "whether the movant has demonstrated a substantial possibility, although less than a likelihood of success" on appeal. See In Re General Motors Corp. 409 B.R. 24, quoting Larouche v. Kezer, 20 F.3d, 72 (2d Cir. 1994); Hirschfeld v. Board of Elections, 984 F.2d 35 (2d Cir. 1993).

---

[1] Per my prior conversation with Chambers on June 1, 2015, I am advised that under no circumstances is the transcript to be filed on ECF. Therefore, transcripts referenced herein are no annexed hereto. As a courtesy, same can be provided to counsel upon request.

10

38. Rushmore has a substantial possibility of success on appeal. The Decision and Order sanctions Rushmore on two grounds. First, Rushmore purportedly failed to act in good faith pursuant to the Loss Mitigation Program Procedures by denying Debtor's application for a modification of her mortgage for failing to provide a down payment and notifying her that proof of funds of a down payment was required. However, prior to the October 7, 2014 denial, Debtor was advised on four (4) separate occasions of the need to provide proof of funds for a down payment. See Exhibits F, H, I, and K.

39. The Decision contradicts its own findings of fact as it incorrectly states Rushmore took five months in notifying the Debtor that Rushmore required a down payment but also quotes September 24, 2014 and September 26, 2014 letters filed on ECF in which all parties were advised of the down payment requirement only 5 weeks after the Loss Mitigation Order was signed. See Exhibit O, pgs. 4 & 8. Thus, Debtor was fully apprised of the down payment requirement.

40. Second, the Decision claims Rushmore failed to designate someone with full settlement authority. See Exhibit O, pg. 13. Pursuant to the Loss mitigation Program, the creditor loss mitigation affidavit designated Angeline Horner, Asset Resolution Specialist as the loss mitigation contact. See Exhibit E. The Decision claims that Ms. Horner was without settlement authority. However, there was no discussion at the February 25, 2015 evidentiary hearing relating to Ms. Horner and no evidence produced at the evidentiary hearing that would prove that Ms. Horner did not have the ability to discuss a loan modification with the Debtor. Thus, the Court's determination

11

that Rushmore failed to designate someone without settlement authority is unsupported by the record.

41. Moreover, pursuant to the Court's request, a vice-president and litigation attorney (Mike Aiken) was produced at the January 21, 2015 hearing and the investor William Bell) was produced at the February 25, 2015 evidentiary hearing.

42. In addition, it is respectfully submitted that the Decision and Order is an abuse of discretion as it fails to provide any statutory or common law references applicable to the facts at issue in this matter. First, the Court cites Badgley v. Santacroce, 800, F.2d 33 (2d Cir. 1990) as authority for its power "to compel a reluctant party do what is required." However, Badgley v. Santacroce deals with prison inmates, not a loan modification or bankruptcy proceeding as in the instant proceeding. Second, the Court cites In Re Bambi, 492 B.R. 183, 190-191 (Bankr. S.D.N.Y. 2013) for its authority that party who fails to participate in Loss Mitigation in good faith may be subject to sanctions. In In Re Bambi, there was an extremely drawn out Loss Mitigation for over a year and half due to a variety of factors including but not limited to relating the creditor changing it policies and failing to obtain an appraisal. Moreover, In Re Bambi was distinguished by the New Jersey Bankruptcy Court, noting that when the servicer "did not attempt to deceive Debtor, did not alter its policies in midcourse, and appears to have communicated openly with Debtor" a finding of bad faith cannot be supported. In Re Doble, 2014 WL 6955350 (Bankrcy D.N.J. 2014). Here, as further stated above, Rushmore followed its policies throughout Loss Mitigation and openly communicated with Debtor. Thus, there cannot be a finding that Rushmore failed to act in good faith.

43. Based on the foregoing it is respectfully submitted that there is a substantial possibility of success on appeal.

## D. THE PUBLIC INTEREST SUPPORTS A STAY

44. The United States District Court Southern District of New York has adopted its own loss mitigation program procedures (the "Loss Mitigation Program"). The Loss Mitigation Program seeks to "facilitate resolution by opening the lines of communication between debtors and lenders' decision-makers." However, the process and procedures of the Loss Mitigation Program are continually evolving. On appeal, the District Court will provide clarification on two (2) important aspects of the Loss Mitigation Program, the creditor's designation of an individual with settlement authority and denial of loan modifications. Almost all loss mitigation cases deal with these two important issues. Thus, the public interest would benefit from a stay by a further determination of these issues.

45. In addition, pursuant to Section 362(d)(1) of the Bankruptcy Code, Bankruptcy courts are empowered to grant creditors relief from the automatic stay imposed upon them at the time a debtor files a bankruptcy petition: Pursuant to said statute:

> "On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay...

1) for cause, including lack of adequate protection of an interest in property of such party in interest" 11 U.S.C. § 362(d).

46. In the Southern District of New York, the courts have consistently held that the failure of a debtor to make regular payments pursuant to a mortgage constitutes sufficient "cause" to justify a lifting of the stay. The United States District Court for the Southern District of New York, in the case of In re Kornhauser, 185 B.R. 425 (Bankr. S.D.N.Y. 1995) found that a mortgagee was not adequately protected where debtor made no payments or de minimus payments to said mortgagee. In the case of In Re Davis, 64 B.R. 358,359 (Bankr. S.D.N.Y. 1986), the court held that "a Chapter 13 debtor's failure to make post-confirmation payments to mortgagee warranted lifting automatic stay." See also In Re Boca Development Associates, 21 B.R. 624 (Bankr. S.D.N.Y. 1982)

47. Pursuant to Section 362(d)(1), bankruptcy courts that have established loss mitigation programs generally require the Debtor to make adequate protection payments to the lender during the loss mitigation period. See United States Bankruptcy Court, District Court of Rhode Island Loss Mitigation Program and Procedures, Section, VI(B)(5); United States Bankruptcy Court, Eastern District of Wisconsin, Chapter 13 Mortgage Modification Program; United States Bankruptcy Court, District of New Jersey Loss Mitigation Program and Procedures. Section VII(B); United States Bankruptcy Court Northern District of California Guidelines Regarding Residential Loan Modifications On Relief From Stay Motions and In Chapter 11 and 13 Plans. In the event the Debtor fails to make the adequate protection payments, loss mitigation is

terminated and/or the lender can make an application to seek relief from the automatic stay.

48. The Loss Mitigation Program of the United States Bankruptcy Court Southern District of New York is unique from other jurisdictions in that while loss mitigation is pending, the creditor is prohibited from making an application to seek relief from the automatic stay. See United States Bankruptcy Court Southern District of New York Loss Mitigation Program Procedures, Section VI(C)(2). Thus, Debtors are not required to make adequate protection payments during Loss Mitigation in this Court. As a result, lenders may spend months (or even years) in loss mitigation without receiving any adequate protection payments and have no means to exercise their rights to terminate the stay in direct contravention of the Bankruptcy Code. The public interest would be served by resolving situations as in this case where the Court has failed to terminate loss mitigation and the credit cannot terminate the automatic stay despite Debtor failing to make post-petition payments.

## NO BOND SHOULD BE REQUIRED

49. A posting of a bond is discretionary and is not a prerequisite to obtain a stay pending appeal. In Re Supreme Specialties, Inc., 330 B.R. 93 (S.D.N.Y. 2005). As stated above, there is no harm to any party by imposing a stay. Thus, there is no need for the Court to impose a posting of a bond.

## CONCLUSION

50.     The instant application has cited to the legal authorities upon which it relies on for the relief sought.  Thus, is respectfully submitted that this instant application satisfies the requirement of Local Rule 9013-1(b).

51.     No prior application has been made for this or like relief.

WHEREFORE, it is respectfully requested that this Court grant Rushmore Loan Management Services LLC's application in its entirety and for such other and further relief as this Court deems just and proper.

Dated:  Elmsford, New York
        June 8, 2015

Knuckles, Komosinski & Elliott LLP

BY: _____
STUART L. KOSSAR, ESQ.
*Attorneys for*
*Rushmore Loan Management Services LLC*
565 Taxter Road, Suite 590
Elmsford, New York 10523
(914) 345-3020
slk@kkelaw.com