```
------------------------------:
                              :  CHAPTER 13
VERONICA C. HOSKING           :  Case No: 14-35174
                              :
                              :  355 Main Street,
                              :  Poughkeepsie, NY 12601
                              :
                              :  February 24, 2015
                              :  Time: 9:00 am
                              :
                              :
------------------------------:
```

**TRANSCRIPT OF NOTICE OF PRE-TRIAL HEARING**
**BEFORE THE HONORABLE CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

APPEARANCES

STACEY PAIGE BYFORD
Law Office of Stacey P. Byford, PLLC
158 Vineyard Avenue
Highland, NY  12528
BY:  VERONICA C. HOSKING


STUART L. KOSSAR
Knuckles, Komosinski & Elliott, LLP
565 Taxter Road Suite 590
Elmsford, NY  10523
BY:  U.S. BANK NATIONAL ASSOCIATION
RMAC TRUST, SERIES 13-00001T

Transcriber, Jennifer Harper-Gonzalez
Schmieder & Meister, Inc.
82 Washington Street, Suite 209
Poughkeepsie, New York  12601
(845) 452-1988

I N D E X

02/24/2015

1        JUDGE MORRIS:  14-35174, Veronica Hosking.

2    State your name and affiliation.

3        STUART KOSSAR:  Stuart Kossar, Knuckles,

4    Komosinski and Elliott on behalf of the secure

5    creditor.  Good morning.

6        JUDGE MORRIS:  Good morning.

7        STACEY BYFORD:  Good morning, Your Honor, Stacey

8    Byford on behalf of Ms. Hosking.

9        STUART KOSSAR:  Your Honor, this is on for a

10   pretrial conference with connection with tomorrow's

11   (indiscernible) hearing.

12       JUDGE MORRIS:  Right.

13       STUART KOSSAR:  I've submitted a proposed joint

14   order with the company exhibits.  I believe that the

15   only issue that could be resolved would be whether or

16   not these guidelines would be reviewed in camera or

17   not.

18       JUDGE MORRIS:  Okay.  And have you read my

19   anthracite (ph.) decision?

20       STUART KOSSAR:  Yes, (indiscernible).

21       JUDGE MORRIS:  Okay, just so you know.

22       STUART KOSSAR:  (Indiscernible), Judge.

23       JUDGE MORRIS:  The burden's on you and I read

24   your documents.  Did you want to add anything to it?

25       STUART KOSSAR:  Well, Judge, I respectfully

1 submit an affidavit stating how these guidelines are

2 confidential proprietary and are essentially what

3 makes the what makes my clients -- how they evaluate

4 loans and modifications and as (indiscernible) to

5 that, that is sensitive commercial information that

6 requires protection because disclosure of that could

7 be used to the detriment by third parties as well as

8 other competitors.

9   JUDGE MORRIS:  Okay.  I hear that.  That's a

10 little over broad for me.  You can sit down.  I'll

11 rule.  The U.S. Bank seeks permission to have its

12 investor guidelines reviewed in camera at the February

13 25th evidentiary hearing under 107(b).  U.S. bank

14 argues that RMAC Trust Series 2013 T is entitled to

15 have its investor guidelines protected pursuant to

16 11USC 107(b) as trade secrets.

17   Section 107(b) states that the bankruptcy court

18 shall protect an entity with respect to a trade secret

19 or confidential research development or commercial

20 information.  The moving party bears the burden of

21 demonstrating that the information it is seeking to

22 protect from public viewing with both commercial and

23 confidential.  In (indiscernible) M Corp 466BR234,

24 Southern District of New York 2012, Emery Northwest

25 Airlines Corp (ph.) 363BR704, the Southern District of

New York 2007.  Good cause is not a statutory
requirement for granting the request of relief under
107(b), Video Software Dealers Association versus
Orion Pictures 21F3rd 24 Second Circuit 1994.

Instead, the code mandates that a bankruptcy
court grant the requested relief if the information is
confidential, commercial information, again Orion
Pictures.  Congress uses the word "are" (ph.) to
distinguish between trade secrets and commercial
information in Section 107.  Thus, commercial
information need not rise to the level of a trade
secret to qualify protection under Section 107(b), in
Borders Group 463BR42 Southern District of New York
2011.

The commercial information exception is not
intended to offer a safe harbor for those who crave
privacy or secrecy for its own sake.  Instead, it
protects parties from the release of information that
would cause them harm or give competitors an unfair
advantage, anthracite 492BR at 178.  This Court has
previously held that redaction is preferable to
wholesale sealing and that when protection is required
under 107 the Court has discretion in deciding how to
protect the information as 107 does not mandate
sealing only protection.  Again, I refer to

1    anthracite.

2         U.S. Bank asked that its entirety of its

3    guidelines be provided in camera without demonstrating

4    that each page contains a trade secret or commercial

5    information.  Thus, U.S. Bank has failed to meet the

6    threshold preventing documents from public disclosure

7    under 107.

8         Moreover, the status report filed by counsel for

9    U.S. Bank on December the 15, 2014, which states

10   debtor's loan modification, was denied as she could

11   not provide a "good faith down payment" and I'm

12   quoting from the letter.  Thus, the investor has a

13   requirement for a down payment is already part of the

14   public record.  The entire investor guidelines do not

15   need to be publicly filed on the Court's docket.

16        The portion of the guideline that require a down

17   payment must be provided to the Court in open court.

18   Showing a document that says a down payment is due is

19   no more damaging than saying policy exists aloud in

20   open court, which has already been done.  This motion

21   is denied.  U.S. Bank is ordered to produce the

22   portion of the investor's guidelines that show the

23   down payment requirement in open court and is

24   witnessed to show -- and its witness should be

25   prepared to testify to be cross examined on the same.

1    Motion denied.  Submit an order.

2        STACEY BYFORD:  Your Honor, if I may, I'm a

3    little bit at a loss.  We have this evidentiary

4    hearing tomorrow morning at 9:00.

5        JUDGE MORRIS:  Right, I'm here.

6        STACEY BYFORD:  As I understand your ruling, I'm

7    permitted to cross-examine their witness --

8        JUDGE MORRIS:  Yes.

9        STACEY BYFORD:  -- regarding guidelines that I

10   haven't even seen yet.

11       JUDGE MORRIS:  You haven't -- you haven't

12   produced them?

13       STUART KOSSAR:  No, because you haven't

14   requested.  I have them here because we had been

15   requesting to produce them in camera.

16       JUDGE MORRIS:  And, and you haven't gone over and

17   shown what the actual reason for all this is all

18   about?  --

19       STUART KOSSAR:  Well, --

20       JUDGE MORRIS:  It's all about a deadline.  You

21   always had to give them to her, always.

22       STACEY BYFORD:  Your Honor --

23       JUDGE MORRIS:  The only thing was whether you had

24   to file it.

25       STUART KOSSAR:  Well, I wasn't aware of that.

1    That's the first time we've had a request for that.

2    STACEY BYFORD:  Your Honor stated on the record

3    at the last hearing --

4    JUDGE MORRIS:  Yeah.

5    STACEY BYFORD -- they had to be provided to me

6    and --

7    STUART KOSSAR:  Right.  I'll provide them.

8    STACEY BYFORD:  -- being provided tomorrow

9    morning is really --

10    JUDGE MORRIS:  Oh, it's ridiculous.  Oh, that's

11    only -- it's ridiculous.  Pay costs for today.  That's

12    why we have a hearing but you had to give her

13    everything.

14    STUART KOSSAR:  Judge, it's a very extremely

15    brief guideline that would -- would take --

16    JUDGE MORRIS:  But why didn't you give it to her

17    so she had time to prepare?  She's in court today.

18    She's got to be here again tomorrow morning.  How many

19    miles does she live from this courthouse?  Come on.

20    It's minus 13 degrees outside.  It was anyway.  I've

21    got to take a break.

22    THE CLERK:  All right.  You may be seated.

23    JUDGE MORRIS:  I don't see how we can go forward

24    with the hearing tomorrow, so we won't.

25    STUART KOSSAR:  Judge, I would only suggest I can

provide the -- the guidelines right now. It's literally a quarter of a page.

JUDGE MORRIS: She has the opportunity to also call for a deposition of the people that wrote it, anybody else. She hasn't had time to study it. And Ms. Byford is now in court all day long as she should be. She then has to deal with her clients that are here today. She's got -- as all of you know that are lawyers, you've got a (indiscernible).

I can't even say it. God, that's the second word today I can't say. And so today, she's concentrating on everything she has. Then tomorrow she's supposed to be here at 9:00 a.m. to cross-examine someone that she doesn't have these guidelines to have even given interrogatories to. You were told to give her the guidelines. I said that. Then you come in and file this. This is for public consumption. She was entitled to them when I made that ruling. And so you expect to just do this from the seat of her pants? I have seen Ms. Byford before. I think she's a good lawyer. That's ridiculous. You can't do that and you're only as good as your last case, so as we all know. Are you giving her the entire guidelines?

STUART KOSSAR: I can provide it right now.

JUDGE MORRIS: Well, hand them over to her. And

1  then you have to provide to me the -- that's it?

2       STUART KOSSAR:  That's it.

3       JUDGE MORRIS:  They're going public.  Well, but

4  she should have the opportunity to cross-examine

5  anyone in a deposition before having to come here.

6  She had -- this is not what discovery's all about.

7  Yes, Ms. Byford.

8       STACEY BYFORD:  This is not a guideline, Your

9  Honor.  If you want to --

10      JUDGE MORRIS:  Let's see it.  Put it up there.

11  Let's see it.

12      STACEY BYFORD:  Did you want me to put it up

13  there?

14      JUDGE MORRIS:  Yeah, it doesn't look like a

15  guideline to me.  Where does it say 25% on there?

16  That's a guideline?

17      STUART KOSSAR:  Those are the guidelines, Judge.

18      STACEY BYFORD:  I wouldn't know how to begin to

19  cross-examine somebody based on that.

20      JUDGE MORRIS:  I wouldn't either.  I wouldn't

21  begin to know what to do.

22      STUART KOSSAR:  Those -- those are the

23  guidelines.

24      JUDGE MORRIS:  We're not having a hearing

25  tomorrow and they're very close to something.  I don't

1      know what.

2              STUART KOSSAR:  Well, Judge --

3              JUDGE MORRIS:  I'm gonna rule against them right

4      now for lack of good faith.

5              STUART KOSSAR:  Well, Judge, we can surely

6      proceed to discovery if that's what --

7              JUDGE MORRIS:  No, I'm gonna rule against your

8      client for lack of good faith.  If that's the

9      guideline and they said, they had to have a down

10     payment, that's a lack of good faith.

11             STUART KOSSAR:  But, Judge, the purpose of --

12             JUDGE MORRIS:  There is no but.  There is no

13     guideline, in other words.  In other words, they're

14     making it up as they go along.

15             STUART KOSSAR:  No, if I can testify as to how

16     the guidelines (indiscernible) should be developed how

17     they're implemented.  That's the purpose of a hearing

18     so that we could provide --

19             THE JUDGE:  No, the purpose of the hearing was to

20     show me in the guidelines where they had to have a 25%

21     down payment because that's why they turned them down.

22     And they said that in the letter and they lied to this

23     Court because they said it was a guideline.

24             Now, that is exactly what was said.  And there's

25     no but -- ifs, ands and buts.  That's what it said.  I

1    have -- I am finding right now that they have not

2    proceeded in good faith.  And because of that, I'm

3    going off on a deep end right now and I will have to

4    think about this but I am charging them for the entire

5    cost of loss mitigation to Ms. Byford and her client

6    because they did not proceed in good faith.

7    Now, from the very beginning they did not.  Now

8    then, since I'm on a tangent, because I'm really

9    pissed, because, honestly, my whole world also

10   revolves around scheduling and if you noted, it was an

11   early schedule tomorrow because there were a lot of

12   people that wanted my time and attention, as they

13   deserve because they are also litigants in this Court.

14   STUART KOSSAR:  Judge, I just respectfully

15   request that my -- my client has provided the

16   guidelines as requested.

17   JUDGE MORRIS:  Absolutely not.  I have now seen

18   them.  This is loss mitigation and I can tell you

19   right now at every single one of these conferences and

20   at every time we have a debtor here, I think this

21   Court has proven that we take the creditors at their

22   word even much more than we do the debtors.  We make

23   the debtors prove things.  And then when it comes --

24   because we really, truly think the creditors are doing

25   this in good faith and this is a prime example of them

1   not doing it in good faith and you are now painting

2   all creditors with a dirty brush.

3       And I'm really, honestly -- if you push a little

4   harder, I'm gonna double the punitives because of what

5   I'm -- I'm thinking that what I'm going to do now is

6   start fining your client $100 a day, $1000 a day, I

7   don't know how much, until they proceed in good faith.

8       STUART KOSSAR:  Well, Your Honor, if the Court

9   wishes to do that, I respectfully request that define

10  how to do that going forward because we provide --

11      JUDGE MORRIS:  It is going to be going forward.

12  You're gonna pay for all the loss mitigation before.

13  And now then you're gonna start paying until you come

14  to the table and come to the table with true

15  guidelines, with what it shows, not some little, silly

16  piece of paper.  Where is the person that made the

17  decision on this?  Have them ready for a deposition,

18  have them in my Court.  I'm not talking about a

19  deposition on that but a deposition on the guidelines.

20      And if that means you bring in the president of

21  the bank, you bring in the president of the bank.  If

22  that means you bring in the president of this trust,

23  you bring in the president of this trust.  But you get

24  her to Ms. Byford first and you let Ms. Byford have

25  her deposition.  You let Ms. Byford have

1    interrogatories with her.  And you're gonna be paying

2    for them.

3        STUART KOSSAR:  Judge, I special request lead to

4    appeal (ph.).

5        JUDGE MORRIS:  Go right ahead.  But I will not

6    stay anything on this lead for appeal.  Now, I haven't

7    entered this order yet but I am really, really angry.

8    Is this a crazy, fake trustee?  Do I have a real

9    trustee here?

10        STUART KOSSAR:  We're going to -- we were going

11    to provide tomorrow with the investor per the Court's

12    request.

13        JUDGE MORRIS:  You're not providing it tomorrow.

14    You're providing it to her for deposition.  And you

15    would you like a deposition tomorrow?  You have no

16    guidelines to go upon.  What would you like to do?

17        STACEY BYFORD:  Well, I'd like to see the actual

18    guidelines?

19        JUDGE MORRIS:  Yeah, where are the actual

20    guidelines?

21        STUART KOSSAR:  Those are it.

22        STACEY BYFORD:  I don't know.  I don't know.

23        JUDGE MORRIS:  Those are not guidelines.  And I

24    have a decision out there on lack of good faith.

25    That's the (indiscernible) decision.  Well, I guess we

could bring him in.  I could put him under oath and
then I could rule against him on good faith because
then I have a record.  It's -- I guess it is a him.  I
called her a her a while ago.  And let him explain the
guidelines or the lack thereof.  All right, 9:00
tomorrow morning.

STUART KOSSAR:  We'll be there.

STACEY BYFORD:  Thank you, Your Honor.

JUDGE MORRIS:  Tell him he's pushing lack of good
faith.

STUART KOSSAR:  I will advise him of that.
Judge, my client is coming from Dallas
(indiscernible).

JUDGE MORRIS:  So what?

STUART KOSSAR:  No, I'm just advising you.  They
get hit -- they got hit by the snow.  But he told me
that he's getting (indiscernible).

JUDGE MORRIS:  It's gone.  The snow is gone in
Dallas.  I know that for a fact.

STUART KOSSAR:  All right, he'll be here
tomorrow, Judge.

JUDGE MORRIS:  Tell him he's got a hostile judge.

STUART KOSSAR:  I will advise him.

(Whereupon these proceedings were concluded at 11:32
a.m.

<u>CERTIFICATION</u>

I, JENNIFER HARPER-GONZALEZ, the assigned transcriber, do hereby certify the foregoing transcript of proceedings before the U.S. Bankruptcy Court, Southern District of New York, on February 24, 2015, on CD, index number from 11:07:42 to 11:32:43; is prepared in full compliance with the current Transcription Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings as recorded, and to the best of my ability.


*Jennifer A. Harper-Gonzalez*
_____        May 4, 2015
JENNIFER HARPER-GONZALEZ            Date
Schmieder & Meister, Inc.